UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN T.,[1]<br><br>　　　　Plaintiff<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[2]<br><br>　　　　Defendant. | Case No. 2:19-cv-08233-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   PROCEDURAL HISTORY

Plaintiff Dawn T. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs addressing disputed issues in the case [Dkt. 18 ("Pl. Br."), Dkt. 19 ("Def. Br.")]. The matter is now ready for decision. For the reasons discussed below, the Court

---

[1]　In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2]　Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB alleging disability based primarily on back pain. [Dkt. 15, Administrative Record ("AR") 36.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Ken Chau. [AR 1-6, 15-24.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2014, the alleged onset date. [AR 17.] At step two, the ALJ found that Plaintiff suffered from severe impairments including: degenerative disc disease of the lumbar spine, status post lumbar laminectomy and L5-S1 posterior lumbar interbody fusion and morbid obesity. [AR 17.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 19.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. [AR 19.] Applying this RFC, the ALJ determined that Plaintiff is unable to perform her past relevant work as a preschool teacher, but she is capable of making a successful adjustment to other work that exists in significant numbers in the economy. [AR 22-23.] Therefore, the ALJ concluded that Plaintiff was not disabled. [AR 24.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

On appeal, Plaintiff argues that the ALJ failed to properly weigh the mental and physical limitations opined by her treating physician. (Pl. Br at 4-11.) The Commissioner asserts that the ALJ's decision should be affirmed. (Def.'s Br. at 1-9.)

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

**A. The ALJ Properly Assessed Plaintiff's Treating Physician's Opinion**

Plaintiff contends that the ALJ failed to evaluate properly the opinion of her longtime treating physician, James Stewart, M.D. Specifically, Plaintiff challenges the ALJ's evaluation of her treating physician's opinion on two grounds: (1) the ALJ improperly rejected Dr. Stewart's mental assessment that found that she was incapable of performing at a consistent pace without an unreasonable number of and lengthy rest periods and (2) the ALJ improperly ignored Dr. Stewart's opined

3

physical limitations. [AR 776-778.] The Commissioner contends that the ALJ properly evaluated Dr. Stewart's opinion by determining that it was inconsistent with the weight of the medical evidence. [Def.'s Br. at 4-7.]

### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[3]

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this

---

[3] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim for DIB was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527.

1 standard by "setting out a detailed and thorough summary of the facts and
2 conflicting clinical evidence, stating [her] interpretation thereof, and making
3 findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*
4 *v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-
5 (6) (when a treating physician's opinion is not given controlling weight, factors such
6 as the nature, extent, and length of the treatment relationship, the frequency of
7 examinations, the specialization of the physician, and whether the physician's
8 opinion is supported by and consistent with the record should be considered in
9 determining the weight to give the opinion).

### 2. Dr. Stewart's Mental Assessment

The record indicates that Plaintiff began treating with Dr. Stewart as her primary care physician on December 4, 2014. [AR 779.] During monthly visits, Dr. Stewart primarily treated Plaintiff for back pain, high blood pressure, and medication refills including Metaformin, Cymbalta, Flexeril, and Dilaudid. [AR 801, 805.] On April 6, 2017, Dr. Stewart completed a mental assessment opining that Plaintiff was "very good" or "satisfactory" in 24 of 25 areas of mental and social functioning. [AR 775-775.] However, Dr. Stewart found that in one area—ability to perform at a consistent pace without an unreasonable number and length of rest periods—Plaintiff is unable to meet competitive standards. [AR 774.]

In addressing Dr. Stewart's mental assessment, the ALJ assigned "no weight to the unsupported mental opinion from Dr. Stewart." [AR 19.] The ALJ opined that because "Dr. Stewart is [Plaintiff's] primary care physician…the opinion regarding the claimant's mental abilities is outside the scope of Dr. Stewart's expertise. Moreover, Dr. Stewart's notes do not show significant problems with mental issues." [AR 19.]

#### a. Analysis

Reviewing the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion, the Court finds the ALJ's decision to

5

discount Dr. Stewart's mental assessment is supported by substantial evidence for three reasons.

First, the ALJ acknowledged that Dr. Stewart was a treating source but found that the doctor's opinion was unsupported by the record as a whole. This was an accurate determination as Dr. Stewart's opinion that Plaintiff was unable to perform at a consistent pace was contradicted by the bulk of the other medical opinions in the record. For instance, consultative psychiatrist Thaworn Rathana-Nakintara, M.D. completed a psychiatric evaluation of Plaintiff on June 17, 2016. [AR 755-760.] Dr. Rathana-Nakintara diagnosed Plaintiff with an "adjustment disorder" but assessed her with a GAF score of 95.[4] [AR 758.] Dr. Rathana-Nakintara found that Plaintiff had no difficulty "focusing and maintaining attention" and no difficulties in "concentration, persistence, and pace." [AR 759.] Based on the examination, Dr. Rathana-Nakintara, opined that Plaintiff would have no difficulty performing detailed and complex tasks and no limitations in performing work activities on a consistent basis without special or additional supervision. [AR 759.]

Another evaluating therapist, Floreen Rooks, performed an assessment of Plaintiff on July 20, 2015. [AR 765.] During that visit, Plaintiff presented with a history of depression and trauma. [AR 766-767.] Plaintiff reported that she "is basically overwhelmed with roles and responsibilities including dealing with her son's ADHD and possible Bipolar" disorder. [AR 766.] Despite these complaints, LMFT Rooks opined that Plaintiff had "unimpaired" memory and "intact" concentration. [AR 771.] Additionally, Plaintiff had no apparent disturbances in her thought process, her affect was appropriate, and she was oriented to time, place, person, and situation. [AR 771.]

---

[4] GAF scores are used by mental health professionals and are meant to subjectively assess the social, occupational, and psychological functioning of a person. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR 34 (2000). GAF scores range between 0 and 100. A score of 91–100 reflects "superior functioning in a wide range of activities." *Id.*

Moreover, state agency reviewing physician E.L. Gilpeer, M.D., found that based on a review of the medical records, Plaintiff did not allege any psychological problems with personal care or activities of daily living and she "lacked a severe psychiatric impairment." [AR 65.]

Overall, of the medical opinions addressing Plaintiff's mental impairments, three out of four of those opinions found that Plaintiff had no limitations in her consistency and concentration. For this reason, it was reasonable for the ALJ to conclude that Dr. Stewart's opinion in this area was an outlier and otherwise unsupported by the other evidence in the record. This was a specific and legitimate reason to discount Dr. Stewart's opinion.

Second, as the ALJ pointed out, Dr. Stewart's opinion was not persuasive because it was conclusory—without supporting explanation by Dr. Stewart's treatment notes. While Dr. Stewart found that Plaintiff's mental impairments prevented her from meeting competitive standards of performing at a consistent pace; causing her to be absent from work more than four times a month, this was inconsistent with the treatment provided by Dr. Stewart. As the ALJ explained, despite such an extreme finding, "Dr. Stewart's notes do not show significant problems with mental issues." [AR 19.] Indeed, based on Plaintiff's own statements it does not appear that Dr. Stewart diagnosed or treated Plaintiff for any mental health related issues. [AR 19.] At her consultative psychiatric evaluation, Plaintiff explained to Dr. Rathana-Nakintara: "I saw a psychiatrist once. He had been treating my son who had mood swings and probably bipolar. He prescribed Cymbalta, and it helped me. I saw him only once. He is the psychiatrist who took care of my son, so my family doctor [Dr. Stewart] took over and continued to give me the same Cymbalta 60 mg daily." [AR 755-756.] Thus, based on Plaintiff's own statements, Dr. Stewart was not treating her for mental impairments, but simply refilling her medications as initially prescribed by another physician. This lack of treatment is bolstered further by the absence of mental health treatment notes in Dr.

Stewart's records. Given this lack of supporting treating records, the ALJ was entitled to find Dr. Stewart's opinion conclusory, and not supported by objective evidence on its face. This was an additionally legitimate reason to reject Dr. Stewart's opinion as "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

Finally, to the extent that Plaintiff takes issue with the ALJ's determination that Dr. Stewart's mental opinion was outside of the scope of Dr. Stewart's expertise, she is incorrect in this instance. Plaintiff cites *Sprague v. Bowen* for the proposition that a physician's opinion about a Plaintiff's mental health may not be disregarded because the physician was not a mental health specialist. *See* 812 F.2d 1226, 1232 (9th Cir. 1987). While Plaintiff is correct that opinions outside a physician's area of expertise are entitled to some weight, this is dependent on whether the physician is actually treating the patient for the condition. In *Sprague*, the physician offering a mental health opinion was actually treating the patient for psychiatric conditions. Here however, Dr. Stewart did not diagnose Plaintiff's mental impairments and there is little evidence that he treated her for mental health other than continue to refill her routine prescriptions for anti-depressant medications prescribed by another physician. Plaintiff's citation to *Sprague* is therefore distinguishable. Because the record contains little evidence that Dr. Stewart treated Plaintiff for her mental impairments, it was not error for the ALJ to rely on Dr. Stewart's lack of expertise as an additional reason to reject Dr. Stewart's mental impairment limitations. *See Price v. Comm'r of Soc. Sec.*, 2008 WL 550121 (E.D. Cal. Feb. 27, 2008), *aff'd sub nom. Price v. Astrue*, 333 F. App'x 335 (9th Cir. 2009) (rejecting the rationale in *Sprague* where treating physician failed to make clinical observations of claimant's depression)

Overall, the ALJ cited specific and legitimate reasons supported by substantial evidence for rejecting Dr. Stewart's mental impairment limitations.

### 3. Dr. Stewart's Physical Assessment

In a related issue, Plaintiff attacks the ALJ's rejection of Dr. Stewart's physical assessment. Dr. Stewart began treating Plaintiff's physical impairments in December 2014, approximately three months before her first, March 2015, back surgery. [AR 779, 530, 535.] In April 2017, Dr. Stewart completed a medical source statement assessing Plaintiff with significant physical work-related limitations. [AR 776-777.] Dr. Stewart opined that Plaintiff was limited to lifting and/or carrying less than 10 pounds, standing and/or walking less than 2 hours in an 8-hour workday, and sitting less than 2 hours in an 8-hour workday. [AR 776.] Dr. Stewart found that Plaintiff needed to alternate between sitting and standing every 20 minutes and would need to lie down every 3 hours. [AR 776.] Dr. Stewart also reported that Plaintiff must never twist, crouch, or climb ladders. She however is able to reach overhead, handle, and feel. [AR 777.]

In addressing Dr. Stewart's physical assessment, the ALJ again assigned "no weight to the unsupported physical opinion from Dr. Stewart." [AR 22.] The ALJ opined that "the extremely limiting restrictions assessed by Dr. Stewart are not consistent with the overall record, especially notations of the claimant's normal gait. Dr. Stewart's own treatment records do not adequately support his opinion." [AR 22.]

#### a. Analysis

The reasons the ALJ gave for rejecting Dr. Stewart's opinion regarding Plaintiff's physical limitations were specific and legitimate. At the outset, the Court notes that similar to Dr. Stewart, the ALJ also opined that Plaintiff would be limited to two hours of standing/walking per day. [AR 19.] Additionally, like Dr. Stewart, the ALJ opined that Plaintiff would need to regularly change positions. [AR 19.] However, the ALJ found that some of the "extremely restrictive limitations"

assessed by Dr. Stewart were unsupported by any objective findings in his own treatment notes. [AR 22.] As noted, many of Dr. Stewart's treatment records lack any complaints with respect to Plaintiff's back pain. [AR 579, 583, 586, 588, 590, 595, 600, 606, 819, 822 and 827.] However, in the reports addressing Plaintiff's back pain, Dr. Stewart consistently advised the following: "advised that bedrest (2-4 days) was only recommended for severe leg pain, and otherwise was not needed and could inhibit recovery. Advised to change position often, use pillows to support back. Recommended aerobic activity, such as walking, swimming, stationary bicycle, light jogging to avoid debilitation, as tolerated within the first 2 weeks. Advised to keep lifted objects close to body near navel, avoid twisting, bending, reaching while lifting. Take over the counter pain meds if not contraindicated." [AR 797, 827, 836, 851, 872.] Such conservative recommendations coupled with the lack of objective testing is inconsistent with Dr. Stewart's ultimate finding that Plaintiff could not sit for more than two hours in a day. Further, when asked on the checkbox physical impairments questionnaire to explain the "medical findings to support the [opined] limitations" Dr. Stewart left the form blank. [AR 777.] Given this lack of supporting explanation, it was reasonable for the ALJ to conclude that the medical source statements contained very little information to explain how Plaintiff's medical conditions could translate into the specific and severe limitations that Dr. Stewart assessed. Thus, the lack of objective findings in Dr. Stewart's own medical records was a specific, legitimate basis for discounting his opinion. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (upholding rejection of treating physician's opinion as his own treatment notes did not support extensive conclusions regarding the claimant's limitations).

Second, the ALJ identified several examples of functioning and daily activities that belie the restrictive limitations opined by Dr. Stewart. The ALJ noted that Plaintiff ambulated with a steady gait in January 2016; she ambulated and did normal tasks with mild pain in March 2016; ambulated with a normal gait in June

2016; sought work as a caregiver in July 2015; moved furniture in November 2015; was in Las Vegas in May 2016; and was able to maintain personal hygiene and occasionally perform some chores in June 2016. [AR 20-21.] Further, at her April 2016 disability interview, the Social Security Administration staff observed that Plaintiff sat for an hour-and-a-half interview during which she did not complain about any pains that she is alleging. [AR 21, 151.] While Plaintiff argues that these activities occurred during the period of improvement after her March 2015 back surgery, that is just one of many rational ways to interpret this evidence. But "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1198 (9th Cir. 2004). Essentially, it is the ALJ's province to review and evaluate the evidence as a whole and the ALJ did so here. The ALJ's reasonable interpretation of the evidence that Plaintiff's activities including travel and intensive physical activities undermined Dr. Stewart's conclusion that Plaintiff is extremely restricted in her abilities was supported by substantial evidence and it should therefore be upheld. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

## V.   CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: July 24, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

11